# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **RICHARD E. ROBINSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 3:09-CV-516-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Richard E. Robinson ("Mr. Robinson") commenced this action on March 18, 2009, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be **REVERSED** and **REMANDED** for further proceedings.

## STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

## FACTUAL AND PROCEDURAL HISTORY

Mr. Robinson alleged that his disability period began on November 1, 2005. (Tr. 182). He was 53 years of age on that date. (Tr. 182). He alleged an inability to work due to the onset of glaucoma. (Tr. 191). Mr. Robinson's past gainful work experiences include jobs as a dye weigher, general laborer, and forklift operator. (Tr. 14, 150).

Mr. Robinson filed applications for benefits on March 9, 2006. (Tr. 182-193). His claims were denied initially on June 7, 2006. (Tr. 166-170). On June 19, 2006, he filed a request for a hearing before an ALJ. (Tr. 12).

A hearing before the ALJ was held on June 19, 2007. (Tr. 12). The ALJ concluded Mr. Robinson was not disabled as defined by the Social Security Act and denied his applications for benefits. (Tr. 12-17). Mr. Robinson subsequently filed a timely request for review with the Appeals Council. (Tr. 21-24). On February 17, 2009, it denied review, which resulted in the ALJ's decision being the final decision of the Commissioner. (Tr. 2-6).

On March 18, 2009, Mr. Robinson filed his complaint with this court asking

for review of the ALJ's decision. (Doc. 1). The matter is ripe for review.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. Also, the Commissioner has a "duty to develop a full and fair record." *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996).

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

> (2) whether the claimant has a severe impairment;
>
> (3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
>
> (4) whether the claimant can perform her past work; and
>
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Mr. Robinson had not engaged in substantial gainful activity since the onset of his alleged disability on August 1, 2005. (Tr. 14). Thus, Mr. Robinson satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ determined that Mr. Robinson had the severe impairment of glaucoma. (Tr. 14 (citations omitted)). Accordingly, the ALJ concluded that Mr. Robinson satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Mr. Robinson did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). Mr. Robinson does not challenge that finding on appeal.

The ALJ evaluated Mr. Robinson's residual functional capacity [1] ("RFC") at step four, and found that Mr. Robinson had the ability

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb, ramp, stairs, ladders, roper, or scaffolds; would have limited field of vision; and should avoid all exposure to hazards.

(Tr. 15 (citing Exhibit 6F)). The ALJ then determined that Mr. Robinson was able to perform his past work as a dye weigher. (Tr. 16 (citing DOT# 221.587-030)).

Because the ALJ found that Mr. Robinson had the RFC to perform his past work, the ALJ did not need to proceed to the fifth step of analysis.

---

[1] "Residual function capacity is the most [one] can still do despite [one's] limitations." 20 C.F.R. § 404.1545(a)(1).

5

Based on the foregoing, the ALJ concluded Mr. Robinson was not disabled as defined by the Social Security Act, at any time from November 1, 2005, through August 3, 2007, the date of the ALJ's decision. (Tr. 17).

## ANALYSIS

Mr. Robinson raises a host of issues in support of his appeal. Among those, he specifically contends that the ALJ's credibility finding as to the severity of his symptoms was not based on substantial evidence and, in making that argument, implicitly challenges whether the ALJ's RFC determination was based on substantial evidence and in accordance with proper legal standards. The court turns to the RFC issue first, and finds that, under the circumstances of Mr. Robinson's case, the ALJ committed reversible error.[2]

**I.     The ALJ did not apply proper legal standards or rely on substantial evidence when assessing Mr. Robinson's RFC.**

When assessing Mr. Robinson's RFC the ALJ opined as follows:

> The record indicates the claimant has 20/30 OD and 20/20 OS. The claimant's vision efficiency and visual acuity is adequate to effectively work with large and small objects, consistently follow written instructions with small and large print, and consistently avoid ordinary hazards in the work place.

---

[2] As a result, the court does not reach the merits of the other issues raised on appeal.

> The undersigned agrees with the assessments given by the State Agency medical consultant regarding the claimant's physical limitations . . . . Considering the totality of the medical record in this case, and the consistency of the findings of the state agency consultant with the objective record, I have adopted that opinion as indicative of the claimant's residual functional capacity. That is, that the claimant has no exertional limitations and should never climb ramps, ladders, stairs, ropes, or scaffolds; would have limited field of vision; and should avoid all exposure to hazards (Exhibit 6F). Consideration has also been given to the assessment of Dr. Singleton as contained in exhibit 3F.

(Tr. 16).

The court has studied Exhibits 3F and 6F, which the ALJ expressly relied upon in support of Mr. Robinson's RFC of a full range of exertional work with restrictions. In sum, neither of those exhibits, whether considered separately, collectively, or in conjunction with other record evidence, provides substantial evidence in support of the ALJ's RFC determination that Mr. Robinson is a capable of performing a full range of work given his severe impairment of glaucoma. Relatedly, the record lacks a medical source opinion[3] that indicates what type of work Mr. Robinson is capable of performing or delineates what vocational restrictions are appropriate given his severe impairment of glaucoma.

---

[3] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p.

Exhibit 3F is a letter submitted by Mr. Robinson's treating physician, Chasidy Singleton, M.D. The ALJ gave the letter "[c]onsideration." (Tr. 16 (citing Exhibit 3F)). The letter reads, in relevant part:

> [On December 1, 2005, Mr. Robinson] was diagnosed with open angle glaucoma . . . . His vision in both eyes without glasses prescription is 20/25 in each eye. However, he has very high eye pressures which have been managed medically at this time. He had automated visual field testing which showed significant constriction of the visual fields of the right eye more so than the left eye. In the right eye, he has a superior altitudinal defect with a dense inferior arcuate defect and only a inferior nasal island remaining which extends from 0 degrees at fixation to approximately 20 degrees inferonasally. The rest of his visual fields have been lost from the glaucoma. In the left eye, he also has significant visual field loss with a superior and inferior arcuate defect. He has a central area of vision remaining that extends from 10 degrees temporally to approximately 15 degrees nasally from fixation. He also has an area of vision in the inferotemporal quadrant extending to 20 degrees from fixation.
>
> I do feel that although his visual acuity is good in both eyes that he has sustained significant visual field loss which may inhibit his ability to drive due to poor peripheral vision.

(Tr. 280). The court notes that Dr. Singleton's letter seemingly constitutes little more than a recitation of raw medical data, which an ALJ is not qualified to interpret. *See Manso-Pizarro v. Sec. of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996) ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record.") (citations omitted). Also, the letter is not a physical function assessment of Mr. Robinson.

Dr. Singleton is the only treating physician of record. The ALJ's opinion does not adequately indicate that he gave Dr. Singleton's evaluations, to the extent they are properly relied upon by a lay individual, the substantial weight to which they are entitled. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). In this case, the ALJ neither stated that he was or was not giving the treating physician's opinion "substantial or considerable weight" nor did the ALJ articulate good cause for implicitly affording Dr. Singleton's opinion mere "consideration." As such, the ALJ committed an error of law, and the case must be remanded to the Commissioner for further proceedings so that the Commissioner can either afford Dr. Singleton's assessments proper weight or articulate good cause for not doing so.

Instead of giving substantial weight to Dr. Singleton's letter, the ALJ states that he "agrees with the assessments given by the State Agency medical consultant regarding the claimant's physical limitations." (Tr. 16). After making that conclusory statement, however, the ALJ does not discuss the State Agency examiner's assessment at all. The court cannot discern from the ALJ's opinion how and in what way he relied on the State Agency examiner's assessments of Mr.

9

Robinson. In any event, the State Agency examiner's assessment does not provide substantial evidence to support the ALJ's RFC determination.

The State Agency examiner,[4] Dr. Nancy E. Medeiros, M.D., examined Mr. Robinson and concluded that he should be restricted from "things" in the workplace "that require normal VF – he has more severe field loss in OD."[5] (Tr. 284). Beyond that assertion, Dr. Medeiros did not offer any opinion as to Mr. Robinson's ability to work or any restrictions that would be necessary as a result of Mr. Robinson's severe impairment. Dr. Medeiros noted that Mr. Robinson has "possibly progressive" glaucoma and that the condition is permanent.[6] (Tr. 284). There is nothing in the State Agency medical consultant's report and no supporting medical records, lab tests, or other data sufficient to rise to even the low level of substantial evidence to support the ALJ's RFC determination. Substantial evidence is "more than a scintilla,

---

[4] According to Social Security regulations, state agency medical consultants "are highly qualified physicians . . . who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical . . . consultants . . . as opinion evidence . . . ." 20 C.F.R. § 404.1527(f)(2)(i).

[5] There is no explanation in the record as to the meaning of "VF" or "OD"; yet, the ALJ and Dr. Medeiros use those terms to describe Mr. Robinson's limitations.

[6] A "one-time examiner," such as Dr. Medeiros, is not a "treating physician." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The absence of evidence, however, is not evidence.

There is no RFC assessment by a medical source in the record. Exhibit 6F, on which the ALJ principally relies when making (and adopts as his finding with regard to) Mr. Robinson's RFC, is a Physical Residual Functional Capacity Assessment completed by C. Lee Waldrup, a non-physician disability examiner, on June 2, 2006. (Tr. 287-294). The report takes into account Mr. Robinson's primary diagnosis of glaucoma. Evidently, based upon a paper review of the raw medical data and without the benefit of a medical source statement regarding Mr. Robinson's physical capacities, Waldrup recommended an RFC of no physical exertional limitations with certain restrictions for Mr. Robinson. (Tr. 287-294). Also, Waldrup found Mr. Robinson's subjective symptoms to be only "partially credible." (Tr. 292). The report states that Mr. Robinson should "avoid all exposure" to "hazards" in the workplace and that he has a limited field of vision. (Tr. 290-291). Once again, the ALJ "adopted" this evaluation as the RFC determination of the Commissioner. <u>However, this is the only document contained in the record that even suggests what type of work Mr. Robinson is physically capable of performing</u>.

Now, this court must decide whether such an evaluation conducted by a lay examiner based on a paper review provides substantial evidence to support the ALJ's

RFC determination. Under the circumstances of this case, the court concludes that it does not. *See, e.g., Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-<u>a proper, medically determined RFC</u> in the record.") (emphasis added).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who determined that the claimant was able to perform her past relevant work without the benefit of a physical capacities evaluation conducted by a physician:

> While the Record contains Ms. Rogers['s] medical treatment history, <u>it lacks any physical capacities evaluation by a physician</u>. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. <u>An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person</u>. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). <u>In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required</u>. *Id.* <u>In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations</u>. Further, Ms. Rogers'[s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers'[s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), <u>an ALJ, as a lay person, is not qualified to interpret raw data in a medical record</u>.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("<u>An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings</u>, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted).

In this instance, because no <u>medically-determined RFC</u> exists in the record, the ALJ has either apparently based the RFC finding upon his interpretation of raw medical data, the lay disability examiner's interpretation of the same, or some combination of the two. Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person (whether an ALJ or a disability examiner) is not able to discern Mr. Robinson's work-related functional abilities based upon the unfiltered information contained in his medical records.

Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on him by a physician, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also*

*Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted). The Commissioner's failure to adequately develop the record constitutes an error of law.

Also, by finding that Mr. Robinson can perform work at all exertional levels, the ALJ implicitly determined that Mr. Robinson is capable of "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more" and that he can perform a job that "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(a-e). There is no evidence in the record speaking to what, if any, physical limitations can be medically expected, given Mr. Robinson's condition. Furthermore, there is no evidence in the record as to whether Mr. Robinson is physically capable of performing work at all exertional levels. As such, the ALJ has failed to adequately develop the record on that issue.

Therefore, for the foregoing reasons, the ALJ's determination that Mr. Robinson can perform a full range of work at all exertional levels is not supported by substantial evidence and is not in accordance with proper legal standards.

Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

Moreover, the ALJ's conclusion that Mr. Robinson could return to his past work is based on a faulty RFC determination.  As a consequence, that conclusion is also erroneous because it is a result of improper legal standards and a lack of substantial evidence at the RFC determination stage; thus, the finding cannot stand on appeal.  The Commissioner must reassess whether Mr. Robinson can return to his past work after he renders new findings regarding Mr. Robinson's RFC.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence.  The decision of the Commissioner will be remanded by separate order.

**DONE** this the 6th day of April, 2010.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge